LEVY, Judge.
This case involves the issue of whether an imprisoned parent who refused to sign papers to have a child placed in the care of a responsible adult because he legitimately questioned his paternity, can be found to have abandoned the child under Section 415.503(9)(d), Florida Statutes (Supp.1990), and thus be placed on the child abuse registry list.
Appellant, E.V., is the legal father of a male child, A.L.M. Both the appellant and A.L.M.’s mother were incarcerated at the time of the anticipated birth date, and both parents initially sought to make provisions to have the child placed in the foster care of the appellant’s friend. However, when the mother’s pregnancy went beyond nine months, the appellant questioned that A.L.M. was his natural child, and withdrew the request for A.L.M. to be placed with the friend.
After the child was born, he was placed in the temporary care of the Department of Health and Rehabilitative Services [HRS]. When HRS attempted to have the appellant sign the necessary papers to have the child placed in the care of a responsible adult, the appellant refused to sign the papers *252 because he did not believe that he was A.L.M.’s natural father.
Pursuant to Section 415.103, Florida Statutes (Supp.1990), HRS establishes and maintains a central abuse registry and tracking system which contains confirmed reports of persons who have committed acts of abuse, neglect, or exploitation upon a child. The appellant’s refusal to participate in making arrangements for the placement of the child was classified by an HRS Protective Services System Investigator as child neglect, and the appellant’s name was placed in the child abuse registry. A.L.M. was eventually adjudicated dependent by the court when both parents pled no contest to the dependency petition. A.L.M. has been in the same shelter home since birth.
Section 415.503(3), Florida Statutes (Supp.1990), defines child abuse or neglect as “harm or threatened harm to a child’s physical or mental health or welfare by the acts or omissions of a parent....” Harm is defined under the statute as occurring where a parent “[ajbandons the child” or “[f]ails to provide the child with supervision or guardianship by specific acts or omissions of a serious nature requiring the intervention of the department or the court.” §§ 415.503(9)(d) & (e), Fla.Stats. (Supp.1990). Upon receiving a report of known or suspected child abuse or neglect, the central abuse registry and tracking system notifies the department, and a child protective investigator commences an investigation. In the case of the filing of a proposed confirmed report by the investigator, a hearing is conducted at which “the department shall prove by a preponderance of the evidence that the alleged perpetrator committed the abuse, neglect, or exploitation.” § 415.504(4)(d)3., Fla.Stats. (Supp.1990). If the report is upheld, the perpetrator’s name is then placed in the central abuse registry and tracking system.
Under the facts of this case, the appellant’s failure to sign the HRS papers to have the child placed in the care of a responsible adult did not amount to the type of conduct that would be required to constitute abuse or neglect under the statute. Section 415.505(1)(f)3., Florida Statutes (Supp.1990), specifically provides that a parent has the right to refuse placement of a child in substitute care. That Section further provides that, in the event a parent does refuse services, the department may take the child into protective custody and institute dependency proceedings in order to protect the child’s welfare. In this case, the appellant was within his rights, under Section 415.505(1)(f)(3), to refuse placement of the child in substitute care by refusing to sign the HRS papers. It would be incongruous to find the appellant’s refusal to sign the papers an act of neglect, where the statute specifically provides that the appellant had the right to refuse such services.
Moreover, in light of the fact that HRS agrees that the appellant genuinely questioned his paternity, the appellant’s actions clearly did not evidence an intent to shirk parental responsibilities, and should not be considered abandonment. Since A.L.M. was already in shelter home care and the appellant was involuntarily confined in prison at the time the appellant refused to sign the papers, it is clear that the appellant’s actions did not harm the child in any way. Such conduct, in and of itself, did not amount to abandonment and was, therefore, an insufficient basis for a report of neglect in the abuse registry.
Accordingly, we reverse the Final Order denying the appellant’s request for ex-pungement of his name from the child abuse registry as a confirmed perpetrator, with instructions that the appellant’s name be removed from the registry.
COPE, J., concurs.